**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                             :
JOAQUINA SALOMON SMITH,                      :
                                             :
        Plaintiff,                           :
                                             :      Civil Action No. 10-5935(CCC)
        v.                                   :
                                             :      OPINION
MICHAEL J. ASTRUE,                           :
COMMISSIONER OF SOCIAL                       :
SECURITY,                                    :
                                             :
        Defendant.                           :
_____:

**CECCHI, District Judge.**

Plaintiff Joaquina Salomon Smith ("Plaintiff") seeks review of Administrative
Law Judge Michal L. Lissek's ("ALJ") finding that she was not disabled.  Plaintiff asserts
that the case should be reversed because the ALJ (1) erred in finding that Plaintiff had
engaged in substantial gainful activity, (2) referred only to Plaintiff's symptoms, ignoring
her medical diagnosis, (3) failed to consider Plaintiff's diagnosis of Hepatitis C and
associated anemia, (4) failed to combine all of Plaintiff's impairments when considering
the severity of Plaintiff's condition, (5) failed to explain why credit was not given to the
medical findings of Plaintiff's primary care physician,   and (6) failed to explain her
reasoning for finding that there are available jobs Plaintiff can perform.[1]  For the reasons

_____

[1] Though Plaintiff sets forth numerous arguments for appeal, Plaintiff states the issue on
appeal as "whether the Commissioner's decision is supported by substantial evidence,"
rather than clearly outlining each point of contention.  Pl.'s Br. 2.  In order to clearly

set forth below, this Court affirms in part the findings of the ALJ, but remands for the reasons set forth in this Opinion.

## FACTS

Plaintiff is a forty-six year-old permanent resident of the United States.  Compl. ¶ 4, Nov. 15, 2010, ECF No. 1; Admin. R. 28, Nov. 19, 2011, ECF No. 6-2.  Plaintiff alleges "limited education" and "no prior work experience," Compl.  ¶ 4., yet, testified that she previously worked as a cosmetologist.  Admin. R. 29 ("I'm a hair dresser"); Admin. R. 43 ("I used to blow dry hair, I used to straighten hair . . . . ").  Additionally, the record indicates that Plaintiff worked as a labeler, small products assembler, and as a housekeeper.  Admin. R. 35-36, 46-47.

Plaintiff alleges she has been disabled since June 1, 2008.[2]  Admin. R. 27. Plaintiff alleges that she suffers from "orthopedic, neurological, liver and psychiatric conditions."  Compl.  ¶ 5.  Plaintiff further alleges that she has severe carpal tunnel syndrome, Hepatitis C, and degenerative disc disease with radiculopathy.  Pl.'s Br. 9-14. Plaintiff claims that her impairments cause neck and back pain, and disable her from grasping objects.  Id.; Admin. R. 26.  Additionally, Plaintiff asserts that "her Hepatitis C had caused anemia and the combination of the two required plaintiff to take three debilitating injections every week, one injection of Ribavirin, a type of PEG interferon to

---

address this issue, the Court has broken Plaintiff's argument into six distinct reasons for appeal.

[2] In her original application for disability benefits, Plaintiff alleged that October 1, 2005 was her onset date of disability.  After discovering that Plaintiff's tax returns showed a $12,433.000 earning in 2008, and a $9,855.000 earning in 2006, Admin R. 119-139, Plaintiff amended the onset date of disability to June 1, 2008.  Admin. R. 27.  In her complaint, Plaintiff requests this Court find she has been disabled since October 1, 2005. Compl. ¶ 2.  In lieu of the record and Plaintiff's previous amendment to the onset date of disability, this Court will use June 1, 2008 as the alleged onset date of disability.

deal with her Hepatitis C and two injections of Neupoquen to deal with her anemia." Pl.'s Br. 10.   Plaintiff saw Dr. Medrano for treatment of her condition.  Pl.'s Br. 14.

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits on July 3, 2007.[3]   Pl.'s Br.  1, June 29, 2011, ECF No. 9.   Plaintiff 's application was denied initially and on reconsideration.  Admin. R. 62 ("you do not qualify for benefits on this claim . . . because you are not disabled under our rules.  We have determined that your condition is not severe enough to be considered disabling."); Admin R. 60 ("Primary Diagnosis: Disorder of back, Secondary Diagnosis: None established (no medical evidence in file)"); Admin R. 61 ("Primary Diagnosis: Disorder of back, Secondary Diagnosis: None established (medical evidence in file but insufficient to establish diagnosis"); Admin. R. 70 ("We find that previous determination denying your clam was proper under the law.  We have determined that your condition should not affect your ability to work.").  On January 13, 2010, Plaintiff had a hearing and testified before the ALJ.  Admin. R. 23-59.  The ALJ affirmed the Social Security Administration's denial of disability benefits, and found that Plaintiff did not have an impairment or combination of impairments that was equivalent in severity to impairments listed in 20 CFR Part 404, Subpart P, Appendix 1, and, thus, was not disabled.   Admin. R. 13-15 ("Taking into consideration the scant medical evidence of record, the consultative examiner's findings that the claimant had full muscle strength and intact fine and gross movements, the normal lumbar spine x-ray, in addition to the entirely unremarkable physical examination with a fully intact cervical range of

---

[3] Plaintiff asserts that she filed for disability on July 1, 2007, Pl.'s Br. 1, yet, the administrative record shows that Plaintiff applied for Social Security Benefits on October 1, 2007.  Admin. R. 105-110 (Summary of Application for Social Security Benefits).

motion and negative straight leg raising, the claimant is not disabled as alleged."). Furthermore, the ALJ found, taking into consideration the medical evidence and this case's individual factors, that Plaintiff "would be able to perform the requirements of a Housekeeping Cleaner, unskilled, with light exertion" and that "[i]n the national economy there are 1.1 million such jobs and in the regional economy there are 1,345 such jobs."   Admin. R. 16.  On September 15, 2010, the Appeals Council denied review of the ALJ's decision.   Admin. R. 1 ("We found no reason under our rules to review the Administrative Law Judge's decision.").   On November 15, 2010, Plaintiff filed a complaint asking this Court to review the ALJ's decision.  Compl.

## DISCUSSION

### A.  Legal Standards

#### 1.      Standard for Determining Disability

Pursuant to the Social Security Act, to receive Supplemental Security Income Benefits, a claimant must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) 1382c(a)(3)(A).   Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy.   42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).   Thus, the claimant's physical or mental impairments must be "of such a severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy...."  Id.  Impairments that affect the claimant's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered *exertional* limitations.  20 C.F.R. § 404.1569a; Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir.2000).  All other impairments are considered *nonexertional.* See Sykes, 228 F.3d at 263.  Decisions regarding disability will be made individually and will be based on evidence adduced at a hearing.  Id. at 262 (citing Heckler v. Campbell, 461 U.S. 458, 467, 103 S.Ct. 1952, 76, L.Ed.2d 66 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).

The Social Security Administration follows a five-step sequential evaluation to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  The evaluation will continue through each step unless it can be determined, at any point, that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five.  Sykes, 228 F.3d at 263 (3d Cir. 2000).  Neither party bears the burden at step three.  Id. at 263, n.2.

At step one, the claimant's work activity is assessed, and the claimant must demonstrate that he is not engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit.  20 C.F.R.

§§ 404.1572, 416.972.  If the claimant is engaged in substantial gainful activity, he will be found not disabled and the analysis will stop, regardless of claimant's medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If the individual is not engaging in substantial gainful activity, the analysis proceeds to the second step.  At step two, the claimant must show he has a medically determinable "severe" impairment or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).  It is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. See Leonardo v. Comm'r of Social Sec., Civ. No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. 2010).  If the claimant does not have a medically determinable severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c).  If the claimant has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether the claimant's impairment matches or is equivalent to a listed impairment found in the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairments are the same or equivalent to those listed, the claimant is *per se* disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d); Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000).  At this point, the ALJ must set forth the reasons for his findings.  Burnett, 220 F.3d at 119. The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence.  Id.  Simple conclusory remarks will not be

sufficient and will leave the ALJ's decision "beyond meaningful judicial review." Id.

When the claimant does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four.  At step four, the ALJ must determine whether the claimant's residual functional capacity enables him to perform his past relevant work.  20 C.F.R.§§ 404.1520(a)(4)(iv), 416.920 (a)(4)(iv).  This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) The ALJ must compare the residual functional capacity to the past relevant work to determine whether the claimant has the capability to perform the past relevant work.  Burnett, 220 F.3d at 120.  The Social Security Administration often classifies residual functional capacity and past work by physical exertion requirements from "sedentary" to "very heavy work."  See id.; 20 C.F.R. § 404.1567.  If the claimant can perform his past work, the ALJ will find that he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant lacks the residual functional capacity to perform any work he has done in the past, the analysis proceeds to the fifth and last step.

At step five, the Social Security Administration Commissioner must show that, based on the claimant's residual functional capacity and other vocational factors, there is a significant amount of other work in the national economy that the claimant can perform.  20 C.F.R. §§404.1520(a)(4)(v); 416.920(a)(4)(v).  During this final step, the burden lies with the government to show that the claimant is not disabled by demonstrating that there is other substantial, gainful work that the claimant could perform, given his age, education, work experience and residual functional capacity.  See

Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005); Sykes, 228 F.3d at 263.  If the Commissioner cannot show there are other jobs for the claimant in the national economy, then the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

      2.    *Standard of Review*

      This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" but must give deference to the administrative findings.  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.1992); see also 42 U.S.C. § 405(g).  Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence.  See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir.1978) (citations omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citations omitted).  If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  Daniels v. Astrue, 2009 U.S. Dist. LEXIS 32110, at *7 (M.D.Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)).

      This Court may not set aside the ALJ's decision merely because it would have come to a different conclusion.  Cruz v. Comm'r of Soc. Sec., 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing Hartranft, 181 F.3d at 360).  However, "where there is conflicting

evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 Fed. Appx. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir.1978)).  Where the Commissioner has rejected competent medical evidence, the ALJ must adequately explain his reasons and provide the rationale behind his decision. See Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir.1986).  Given the totality of the evidence, including objective medical facts, diagnoses and medical opinions, and subjective evidence of pain, the reviewing court must determine whether the Commissioner's decision is adequately supported.  See Curtain v. Harris, 508 F.Supp. 791, 793 (D.N.J.1981).  Generally, medical opinions consistent with other evidence are given more weight while opinions inconsistent with the evidence or with themselves are subject to additional scrutiny.  20 C.F.R. § 416.927.  Overall, the substantial evidence standard requires deference to inferences drawn by the ALJ from the facts if those inferences are supported by substantial evidence.  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir.1999).  District courts may review decisions of the Commissioner of Social Security to make sure that they are supported by "substantial evidence."  See Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citing Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994)).

**B.  Issues on Appeal**

Plaintiff seeks a reversal or remand of the underlying decisions asserting that (1) at step one, the ALJ erred in finding that Plaintiff had engaged in substantial gainful activity, (2) at step two, the ALJ referred only to Plaintiff's symptoms, not her illness, (3) at step two the ALJ failed to consider Plaintiff's diagnosis and symptoms of Hepatitis C, (4) at step two and three the ALJ did not combine Plaintiff's impairments when

considering severity and comparing the severity to those listed under 20 C.F.R. § 404, Subpart P, Appendix 1, (5) at step four, the ALJ did not explain why she did not give credit to Dr. Medrano's medical findings, and (6) at step five, the ALJ failed to substantiate her findings that Plaintiff could work.  Pl.'s Br.    Each of Plaintiff's contentions shall be addressed separately.

### 1.  *Finding Plaintiff Engaged in Substantial Gainful Activity*

Plaintiff alleges that the ALJ erred at step one in finding that Plaintiff engaged in substantial gainful activity.  See Pl.'s Br. 8-9 ("the administrative decision commits errors . . . based on her misunderstanding of plaintiff's testimony and the administrative record with regard to plaintiff's business income from a cleaning service which she invented but could not sustain.").  The Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence.  See Gober, 574 F.2d at 776.  As stated previously, substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.

The ALJ, using June 1, 2008 as the onset date of disability, found that Plaintiff was not disabled in 2008 because "[t]he claimant's 2008 tax return submitted post-hearing indicates that the claimant reported $13,378 in earnings from a 'cleaning' business." Admin. R. 12.  The ALJ asserts that because Plaintiff earned money in 2008, "evidence shows that she could have also done her cleaning work in 2009." Id. Yet, in reaching her conclusion, the ALJ did not address whether Plaintiff's earnings from 2008 were from before or after June 1, 2008.  Thus, further analysis is required to establish that the Plaintiff worked after the June 1, 2008 onset date.  Therefore, the Court remands the

10

case so that the ALJ may substantiate her finding of substantial gainful activity subsequent to the June 1, 2008 onset date.[4]

2.  *Failure to Consider Plaintiff's Diagnosis of Degenerative Disc Disease with Radiculopathy*

Plaintiff asserts that the ALJ erred in considering Plaintiff's alleged back and neck pain as impairments instead of symptoms of Plaintiff's degenerative disc disease with radiculopathy.  Pl.'s Br. 9 ("what sort of impairments are 'back pain and neck pain'? Here, the ALJ intangles [*sic*] her decision in a counter-untuitive [*sic*] clash of findings. Back pain and neck pain are not impairments, they are symptoms of impairments."). Further, Plaintiff asserts that the "ALJ disposes of [] actual proven impairments by re-naming them by their sympatomatology, back pain and neck pain." Id. at 10.

Plaintiff's argument fails to take into consideration that in both filing for disability and throughout the hearing, Plaintiff and her counsel referred to Plaintiff's disabling condition as back pain.  Admin. R. 26; Admin R. 144 (On her Disability Report Form SSA-3368, when asked "What are the illnesses, injuries, or conditions that limit your ability to work?" Plaintiff answered, "Back pain.").  When appearing before the ALJ, Plaintiff's counsel stated that

> "[t]he problems that she have [*sic*] basically -- basically three, has significant back pain, which is documented in the record restricting her ability mainly in the lumbar area with bending forward, lifting, carrying, staying on her feet.  Also, problems with fatigue from Hepatitis C and, also, significant problems shown on EMG studies with – problems with both wrists with carpal tunnel, as well as a right elbow neuropathy, which

---

[4] The Court notes that the ALJ did not stop her analysis at this step, which would be proper if the evidence was conclusive that the Plaintiff was engaged in gainful activity. Instead, the ALJ conducted the remainder of the analysis through step five, stating that "[e]ven if [Plaintiff] did not perform substantial gainful activity level work, the claimant is also not disabled at Steps 4 and/or 5."  Admin. R. 13.

is affecting her ability to function . . . ."  Admin. R. 26.

Thus, when referring to "back pain" in the opinion, the ALJ was using terminology consistent with Plaintiff's pleadings and application.

Even if the ALJ's reference to Plaintiff's impairments as "back pain" and "neck pain" were inconsistent with Plaintiff's testimony, pleadings, and application for disability, the ALJ did not err in her analysis of Plaintiff's condition.  The ALJ found that "[t]he claimant has back pain and neck pain as evidenced by medical records; and carpal tunnel syndrome as evidenced by an EMG study.  These impairments are shown to result in vocationally significant limitations and have lasted at a 'severe' level for a continuous period of more than 12 months."  Admin. R. 13.  The ALJ's analysis of Plaintiff's "back pain" took into consideration all of the medical evidence on the record, as required in step two.  At step three, the ALJ noted that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show signs or findings that are the same or equivalent to those of any listed impairment." Admin. R. 13.  As required at step three, the ALJ considered relevant medical testimony to determine if Plaintiff's impairments were the same or equal to a listed impairment, and concluded that they were not.

This Court does not find that the ALJ's findings of severe impairments and non-disability would have been altered had the ALJ referred to Plaintiff's condition as degenerative disc disease with radiculopathy instead of neck and back pain.  The ALJ would have evaluated the medical evidence on the record and undergone the same analysis regardless of whether the ALJ referred to the impairment as back pain or as degenerative disc disease with radiculopathy.  Thus, the ALJ's conclusions that Plaintiff

had severe impairments, yet, was not disabled is affirmed.

### 3. Failure to Consider Plaintiff's Diagnosis of Hepatitis C

Plaintiff asserts that the ALJ failed to consider Plaintiff's diagnosis of Hepatitis C when determining Plaintiff's disability.  Pl.'s Br. 10.  Plaintiff's diagnosis of Hepatitis C is substantiated in the record, and was asserted by Plaintiff's counsel in the administrative hearing.  Admin. R. 168, 26.  Despite medical evidence establishing Hepatitis C, the ALJ failed to consider Plaintiff's diagnosis when determining disability.  See Admin. R. 10-17.  As Plaintiff asserts, the ALJ's failure to acknowledge Plaintiff's diagnosis of Hepatitis C led to a failure of the ALJ to consider the symptoms associated with Hepatitis C when determining if Plaintiff suffered from severe Hepatitis C.  Pl.'s Br. 10.  Therefore, the Court remands the case so that the ALJ may consider Plaintiff's diagnosis of Hepatitis C at step two of the disability inquiry.

### 4. Failure to Combine Impairments when Considering Severity and to Compare Plaintiff's Impairment to those Listed in 20 C.F.R. § 404, Subpart P, Appendix 1

Plaintiff asserts that the ALJ erred when failing to consider the diagnosis of Hepatitis C, and thus, failed to combine Plaintiff's Hepatitis C impairments with her other impairments.  Pl.'s Br. 11.  At step two, the claimant must show he has a medically determinable "severe" impairment or a combination of impairments that is "severe."  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The ALJ's omission of Hepatitis C at step two demonstrates that the ALJ failed to consider Hepatitis C, and its associated symptoms, when combining impairments at step three.  Further, because the ALJ failed to combine all impairments, the ALJ was unable to correctly compare the combinations of

impairments to those listed under 20 C.F.R. § 404, Subpart P, Appendix 1 at step three. Therefore, this Court remands the case so that the ALJ may consider Plaintiff's diagnosis of Hepatitis C at both step two and step three.

5. *Failure to Explain why Dr. Medrano's Medical Findings were Rejected*

Plaintiff contends that the ALJ erred in giving more weight to the findings of Dr. Napolitano than the findings of Dr. Medrano. Pl.'s Br. 31-32. Further, Plaintiff argues that Dr. Napolitano's findings are not based on sound medical evidence. ("she [ALJ] credits Dr. Napolitano, who basically says that there is nothing wrong with the plaintiff in contradiction of an objective test, an electromyography (EMG) which proves that plaintiff has these restrictions. Dr. Medrano has an EMG to base his opinion on. What does Dr. Napolitano base her opinion on? A 20 minute examination?").[5]   As stated previously, when reviewing an ALJ's decision, this Court must grant deference to the ALJ, Williams, 970 F.2d at 1182, and cannot reverse the decision merely because it would have come to a different conclusion. Cruz, 244 Fed. Appx. at 479. Thus, in reviewing the ALJ's decision, this court must determine if the ALJ's conclusions are substantially supported. See Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citing Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994)).

Though the ALJ does acknowledge that Plaintiff has severe carpal tunnel syndrome, the ALJ notes that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the

---

[5] Plaintiff appears to assert that Dr. Napolitano's medical findings were not substantiated because he did not order or review an EMG of Plaintiff's wrist. Yet, this argument fails to consider that the ALJ found that "claimant has . . . carpal tunnel syndrome as evidenced by an EMG study." Admin. R. 13. Thus, regardless of whether Dr. Napolitano or Dr. Medrano ordered the EMG, the ALJ considered and credited the EMG when determining Plaintiff's disability status.

evidence show signs or findings that are the same or equivalent to those of any listed impairment." Admin R. 13. Further, the ALJ found that "[w]hile there is an EMG study in the file that evidences carpal tunnel syndrome, this is a condition that can wax and wane and there is insufficient evidence in the record that this problem persists and is a reason that she [Plaintiff] cannot work." Admin. R. 14. The ALJ supports her finding by stating "[a]t Dr. Elena Napolitano's May 29, 2008 orthopedic consultative examination the claimant did not complain of any hand or wrist pain . . . Also, Dr. Napolitano's report indicates that the claimant's 'muscle strength demonstrates 5/5 strength to the bilateral upper and lower extremities including fine motor.'").

As stated above, "where there is conflicting [medical] evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 Fed. Appx. at 479 (citing Hargenrader, 575 F.2d at 437). In the opinion, the ALJ sufficiently explained why Dr. Medrano's report was given little weight, stating that "Dr. E.V. Medrano's February 11, 2008 examination report is given little weight because Dr. Medrano states that the claimant has a severe impairment as a result of back pain, but fails to elucidate specific exertional limitations or provide any objective, clinical or diagnostic evidence supporting his opinions." Admin. R. 15. Further, the ALJ sufficiently explains why greater weight was given to Dr. Napolitano's findings than Dr. Medrano's, stating "the opinions of the orthopedic consultative examiner [Dr. Napolitano] are accorded controlling weight since those opinions are consistent with and well supported by the record." Id. The ALJ adequately substantiated her basis for giving more weight to the findings of Dr. Napolitano than the findings of Dr. Medrano, and thus, the ALJ's decision is affirmed.

6.  *Failure to Substantiate Findings of Claimant's Ability to Work*

Plaintiff asserts that the ALJ failed to substantiate the findings that Plaintiff would be able to work as a housekeeper.  Pl.'s Br. 33-34 ("The ALJ doesn't explain why plaintiff's severe carpal tunnel syndrome would allow her to use her hands six hours a day, doesn't explain why or how a housekeeper wouldn't be obligated to use her hands eight hours a day . . . .").  As stated previously, at step four the ALJ must (1) make specific findings of fact as to the claimant's residual functional capacity; (2) make findings of the physical and mental demands of the claimant's past relevant work; and (3) compare the residual functional capacity to the past relevant work to determine whether the claimant has the capability to perform the past relevant work.  Burnett, 220 F.3d at 120.  At step five, the burden lies with the government to show that the claimant is not disabled by demonstrating that there is other substantial, gainful work that the claimant could perform, given his age, education, work experience and residual functional capacity.  See Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).

In the opinion, the ALJ merely asserts that "even assuming that there was no substantial gainful activity level work, the vocational expert found other work that a hypothetical individual with the claimant's age, education, work experience, and residual functional capacity could perform."  Admin. R. 15.  The ALJ's opinion fails to assert specific facts demonstrating claimant's residual functional capacity, the mental demands of Plaintiff's past job, or a comparison of Plaintiffs RFC with her previous job.

At step five, the ALJ, considering Plaintiff's age, education, prior work experience, and purported RFC, determined that there were jobs for Plaintiff in the national economy.  Admin. R. 15-16.  The ALJ supported her finding by relying on the

16

testimony of a vocational expert.   Admin. R. 16.   Yet, an ALJ cannot with certainty determine there are jobs for a Plaintiff in the national economy where the RFC has not been substantiated with specific facts.   On remand, the ALJ shall fully develop the record and explain the findings at steps four and five, including an analysis of Plaintiff's residual functional capacity, the mental demands of Plaintiff's last job, and Plaintiff's ability to find employment within the national economy.

## CONCLUSION

The Court affirms the ALJ's decision in part and remands for the ALJ to (1) substantiate and analyze whether the Plaintiff engaged in substantial gainful activity after June, 1, 2008, (2) consider Plaintiff's diagnosis of Hepatitis C at step three, (3) combine and compare Hepatitis C and its associated symptoms with Plaintiff's other impairments when making a determination of impairment severity and disability, and (4) substantiate her findings regarding Plaintiff's RFC and ability to find jobs in the national economy. This Court remands the matter for further analysis in accordance with this Opinion.   An appropriate Order accompanies this Opinion.

Dated: February 29, 2012                          _____   s/*Claire C. Cecchi*_ _____
                                                  HON. CLAIRE C. CECCHI
                                                  United States District Judge